
DA 10-0105

IN THE SUPREME COURT OF THE STATE OF MONTANA

2010 MT 223

STATE OF MONTANA,

        Plaintiff and Appellee,

  v.

LANCE YUHAS,

        Defendant and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Broadwater, Cause No. DC 09-13
Honorable Jeffrey M. Sherlock, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Johnna K. Baffa, Van de Wetering Law Offices, P.C., Missoula, Montana

        For Appellee:

                Steve Bullock, Montana Attorney General; Tammy K. Plubell, Assistant Attorney General, Helena, Montana

                John T. Flynn, Broadwater County Attorney, Townsend, Montana

Submitted on Briefs:  September 29, 2010

Decided:  October 26, 2010

Filed:

_____
Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1 Following a bench trial in the First Judicial District Court, Broadwater County, Appellant Lance Yuhas was convicted of stalking pursuant to § 45-5-220, MCA. Yuhas appeals. The sole issue on appeal is whether sufficient evidence was presented at trial to support Yuhas's conviction. We affirm.

## BACKGROUND

¶2 On September 24, 2008, Yuhas attended the Broadwater County High School football practice, where B.T., the teenage son of Yuhas's girlfriend, Marla, was practicing. Marla and B.T.'s father, Ken, had recently divorced. In August, Ken had sent Yuhas a no contact letter, requesting that Yuhas leave Ken and his children alone, and had filed it with Broadwater County victim witness advocate, Brooke Dolan. Yuhas had received a copy of the letter and had been informed of its contents by law enforcement when he attended B.T.'s football practice on September 24.

¶3 B.T. had never met Yuhas and did not recognize the stranger watching his practice. Assistant football coach John O'Dell, concerned that Yuhas was a scout from a rival team, approached Yuhas to find out with whom he was affiliated. Yuhas informed O'Dell that he was B.T.'s shirttail relative. At trial, O'Dell testified that when he told B.T. the man was Yuhas, B.T. became "beside himself . . . just distraught, maybe slightly panicked." B.T. testified that he was scared and intimidated when he learned of the stranger's identity and left the practice field to telephone his father. Shortly thereafter, Yuhas left the field.

2

¶4      That evening, Yuhas attended the school's homecoming bonfire with Marla. Yuhas stood approximately twenty feet away from B.T. and his friends, making B.T. feel "really scared and intimidated." B.T. observed Yuhas taking pictures of him.

¶5      The following afternoon, Yuhas again attended the football practice and stood close to where B.T. was practicing. Coach O'Dell telephoned principal Rob Hankins who came out to the football field to ask Yuhas to leave. When Hankins arrived, he asked Yuhas why he was on the field and informed him that it made B.T. uncomfortable. Yuhas asserted that he had a right to attend the practice, but finally relented and left the field. Hankins met with B.T. the next day and observed that B.T. was "distraught" about the incident. Subsequently, B.T. met with victim witness advocate Dolan who assisted him in filing a complaint with the sheriff's office. Dolan described B.T. as "upset and scared."

¶6      In October 2008, the State charged Yuhas with stalking, a misdemeanor offense, in violation of § 45-5-220, MCA, for acts committed on September 24 and 25. After a jury convicted him in city court, Yuhas appealed de novo to the First Judicial District Court where, following a bench trial, he was found guilty.

## STANDARD OF REVIEW

¶7      The standard of review of the sufficiency of evidence to sustain a conviction is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Kelley*, 2005 MT 200, ¶ 17, 328 Mont. 187, 119 P.3d 67.

## DISCUSSION

¶8 A person commits the offense of stalking if he or she "purposely or knowingly causes another person substantial emotional distress or reasonable apprehension of bodily injury or death by repeatedly: (a) following the stalked person; or (b) harassing, threatening, or intimidating the stalked person, in person or by mail, electronic communication . . . or any other action, device, or method." Section 45-5-220(1), MCA. Once the accused has received actual notice that the stalked person does not want to be contacted or followed, any further attempts by the accused to contact or follow that person constitute prima facie evidence that the accused purposely or knowingly followed, harassed, threatened, or intimidated the stalked person. Section 45-5-220(6), MCA.

¶9 Whether a stalked person has suffered substantial emotional distress is determined by a reasonable person standard—whether, when faced with the same conduct, a reasonable person would experience substantial emotional distress. *State v. Martel*, 273 Mont. 143, 150, 902 P.2d 14, 19 (1995). A stalked person need not manifest physical symptoms in order to establish substantial emotional distress. *Id.* at 152, 902 P.2d at 20 (holding that a stalked person's becoming frustrated, upset, angry, and scared constituted substantial emotional distress).

¶10 A repeated action is one that happens more than once. Intimidation consists of making a stalked person timid or frightened. *Id.* at 150, 902 P.2d at 19.

¶11 The District Court, relying on § 45-5-220(6), MCA, concluded that the actual notice given to Yuhas in the no contact letter constituted prima facie evidence that Yuhas acted purposely or knowingly when he appeared at the bonfire and two football practices. The

4

District Court further concluded that there was "no question" B.T. suffered substantial emotional distress as a result of Yuhas's actions. Finally, the court determined that even though Yuhas never met or attempted to contact B.T., Yuhas's acts of repeatedly watching B.T. constituted a device or method used to harass and/or intimidate B.T.

¶12 On appeal, Yuhas argues that B.T. did not suffer substantial emotional distress because he continued to perform well in school and extracurricular activities after the alleged stalking occurred. Yuhas further argues that even if B.T. did suffer substantial emotional distress, it is not attributable to Yuhas's conduct, but rather to B.T.'s parents' divorce. Additionally, Yuhas asserts the second prong of the stalking statute cannot be met because Yuhas never repeatedly contacted, followed, harassed, intimidated, or threatened B.T.

¶13 The record before us contains sufficient evidence that B.T. suffered substantial emotional distress. B.T. described himself as being "really scared and intimidated" after Yuhas appeared at the football practices and bonfire. In addition, others who knew B.T. described him as being beside himself, upset, slightly panicked, and distraught. Pursuant to our decision in *Martel*, and contrary to Yuhas's argument, B.T. need not have exhibited physical symptoms or experienced substantial changes in his life, such as decreased performances in school or extracurricular activities, in order to establish substantial emotional distress. *Id.* at 152, 902 P.2d at 20. Further, B.T.'s distress was reasonable, as he knew Yuhas was not supposed to contact him. The record also supports the District Court's conclusion that Yuhas's actions directly caused B.T. substantial emotional distress. While

5

B.T. may have been generally upset by his parents' divorce, he specifically exhibited substantial emotional distress upon Yuhas's appearances.

¶14 Further, Yuhas's actions clearly occurred more than once: He appeared at two football practices and the homecoming bonfire over a two day period. Therefore, the stalking statute's requirement that the acts occur repeatedly is satisfied. *Id.* at 150, 902 P.2d at 19.

¶15 Additionally, sufficient evidence exists that Yuhas repeatedly watched B.T. in order to intimidate and/or harass him. As the District Court noted, the legislative intent behind § 45-5-220, MCA, indicates the statute contemplated criminalizing and punishing "the activities of people who repeatedly *watch* . . . someone when such activity causes the victim substantial emotional distress or reasonable apprehension of bodily injury or death." Mont. Sen. Stand. Comm. Rpt., 53d Leg., Reg. Sess. 1 (Jan. 26, 1993) (emphasis added). Yuhas's acts of watching B.T. at football practices and at the bonfire served as his method of harassing and/or intimidating B.T. Finally, sufficient evidence in the record supports the District Court's conclusion that B.T. was intimidated or harassed: B.T. testified he was intimidated and scared when he observed Yuhas near him.

**CONCLUSION**

¶16 There is sufficient evidence in the record from which a rational trier of fact could have found beyond a reasonable doubt that Yuhas committed the offense of stalking. We affirm.

6

/S/ MICHAEL E WHEAT


We Concur:

/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE