
DA 12-0321

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 113

STATE OF MONTANA,

　　　　Plaintiff and Appellee,

　v.

JEFFREY EDWARD BAKER,

　　　　Defendant and Appellant.

APPEAL FROM:　　District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. BDC 2011-3
Honorable Jeffrey M. Sherlock, Presiding Judge

COUNSEL OF RECORD:

　　　　For Appellant:

　　　　Palmer A. Hoovestal, Attorney at Law, Helena, Montana

　　　　For Appellee:

　　　　Timothy C. Fox, Montana Attorney General; Tammy A. Hinderman, Assistant Attorney General, Helena, Montana

　　　　Leo J. Gallagher, Lewis and Clark County Attorney; Tara Harris and Melissa Broch, Deputy County Attorneys, Helena, Montana

Submitted on Briefs:　March 13, 2013
Decided:　April 30, 2013

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     Jeffrey Edward Baker appeals from his conviction and sentence for sexual assault in violation of § 45-5-502, MCA.  We affirm the conviction but decline to address the claim of ineffective assistance of counsel.

¶2     Baker presents issues for review which we restate as follows:

¶3     Issue One:  Whether the District Court erred by admitting into evidence a recorded interview with the victim.

¶4     Issue Two:  Whether there was sufficient evidence to support the conviction.

¶5     Issue Three:  Whether the District Court erred in denying Baker's motion for a new trial.

¶6     Issue Four:  Whether Baker's attorney provided ineffective assistance at trial.

## PROCEDURAL AND FACTUAL BACKGROUND

¶7     In 2006 Baker began a relationship with the mother of H.B., who was then age 2. When H.B. was age 4 she told her mother about sexual contact Baker had with her, which Baker denied.  H.B.'s mother eventually moved out of Baker's residence and in 2010 H.B. told her mother that Baker touched her inappropriately.  "He touches his pee to my pee pee and it kind of hurts."  H.B.'s mother called the police.

¶8     A trained forensic interviewer, Dawn Spencer, interviewed H.B. prior to trial.  H.B. was reluctant to talk about Baker but told Spencer that Baker touched her inappropriately "in a bad way," and put his privates into her privates.

¶9     In an interview with a Sheriff's Department detective, Baker denied any inappropriate contact with H.B.  In 2011 the State charged Baker with felony sexual assault based upon incidents of sexual contact with H.B. between 2006 and 2010.

¶10    H.B. was age 7 when she testified as the first witness at Baker's jury trial in January, 2012.  She testified that Baker was mean and that she was afraid of him but refused to elaborate.  The following exchanges on direct examination are typical of H.B.'s testimony at trial:

> Q:  And do you—do you and your dad [Baker] have a secret?
> A:  Yes, but I'm not telling you it.
> Q:  Why not?
> A:  Because.
> Q:  Tell me why not.
> A:  I can't.
> Q:  Why can't you tell me the secret?
> A:  Because.
> Q:  Did you tell anyone what the secret was?
> A:  No.
> Q:  Never ever?
> A:  No.  It's me and my mom's little secret.

H.B. testified that she had a secret with Baker that she would not tell to anyone.  H.B. did not recall the interview with Spencer.  She denied drawing the penis that she drew during the Spencer interview.  While she testified that Baker had touched her inappropriately, she would not be more specific other than to indicate that it would be inappropriate to touch her private parts.  She also circled the groin area on a stick figure presented by the State, indicating the location of her private parts.  She would not say what Baker touched her with.

3

She repeatedly stated that she did not want to tell.

¶11     On cross-examination by the defense, H.B. stated that she had not told her secret to anyone except her mother and that she would not tell the court either.  She said that she would not tell because she was afraid.

¶12     From the time that the charging documents were filed, the State disclosed that Dawn Spencer had interviewed H.B., that there was a recording of the interview, and that Spencer would testify at trial.  Spencer testified and was cross-examined about her background and experience, and about the circumstances of the recorded interview with H.B.  Baker's attorney filed a written objection to admission of the tape, based upon arguments that it was hearsay and denied his right to confront witnesses.  The District Court denied the objection and a tape of that interview was admitted into evidence.

¶13     Spencer's interview with H.B. was played to the jury.  In the interview H.B. said that Baker touched her in a way she didn't like.  She said he had touched his privates into her privates in the front of her body, and had put his private part inside her private part.  She said that this occurred more than once in bed and in the bath.  H.B. stated more than once that Baker "touches into her" in the bath and that these things happened when her mother was not home.  She said that it hurt.  She drew a picture of a penis to show what had happened.

¶14     H.B.'s mother testified that H.B. had told her that Baker put his penis into H.B.'s mouth and took showers with her.  She was 4 at the time.  H.B.'s mother testified that later after she and Baker terminated their relationship, H.B. told her again that Baker had touched her inappropriately.  H.B. said that Baker touched his pee pee into her pee pee and that it

4

hurt. H.B.'s therapist testified that H.B. said that Baker "tortured" her and did "something gross" that she didn't want to talk about.

¶15 Baker did not testify at trial and the jury convicted him of sexual assault. The District Court sentenced him to 40 years at the Montana State Prison with 20 years suspended and restricted parole eligibility for 10 years. Baker appeals.

## DISCUSSION

¶16 Issue One: Whether the District Court erred by admitting the recorded interview with the victim.

¶17 Baker contends that the District Court's decision to admit the recording of Spencer's interview with H.B. violated his rights to confront witnesses against him. This Court's review of constitutional issues is plenary, and we review de novo a district court's decisions on those issues. *State v. Stock*, 2011 MT 131, ¶ 16, 361 Mont. 1, 256 P.3d 899.

¶18 Both the Montana Constitution, Art. II, Sec. 24, and the United States Constitution, Amend. VI, provide a defendant with the right to confront or to face the witnesses against him. *State v. Maier*, 1999 MT 51, ¶ 18, 293 Mont. 403, 977 P.3d 298; *Stock*, ¶ 23. The essential purpose of the right to confront witnesses is to secure the opportunity to test the witness's testimony through cross-examination. *Delaware v. Van Arsdall*, 475 U.S. 673, 678, 106 S. Ct. 1431, 1435 (1986); *Stock*, ¶ 26.

¶19 The right to confrontation "includes no guarantee that every witness called by the prosecution will refrain from giving testimony that is marred by forgetfulness, confusion or evasion." *United States v. Owens*, 484 U.S. 554, 558, 108 S. Ct. 838, 842 (1988). The right

to confront includes only the opportunity for cross-examination, but not any guarantee that it will elicit helpful evidence. *Owens*, 484 U.S. at 559, 108 S. Ct. at 842.

¶20 Both Federal and State decisions establish that the right to confront witnesses is not violated when a testifying witness's prior statement is admitted into evidence. *California v. Green*, 399 U.S. 149, 90 S. Ct. 1930 (1970); *Maier*, ¶ 44. When a witness appears at trial and is available for cross-examination, the right to confrontation does not constrain admission of prior testimonial statements by the witness. *State v. Howard*, 2011 MT 246, ¶ 33, 362 Mont. 196, 265 P.3d 606 (*citing Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354 (2004).

¶21 In *Howard* the defendant was charged with incest. Like the present case, the child victim testified at trial and the district court admitted a video of a nurse's interview with the victim. On appeal Howard argued that his attorney was ineffective for failing to raise a Confrontation Clause objection to admission of the interview video. This Court held that it was not ineffective assistance of counsel to fail to make a Confrontation Clause objection to the admission of the recording of a prior interview with the victim. The defendant's rights under the Confrontation Clause were protected because the victim testified at trial and was subject to cross-examination. *Howard*, ¶¶ 33-34.

¶22 In *Maier,* a witness identified a person other than Maier as the person who had shot the victim. The witness later told police that the first statement was a lie because he feared Maier, and that Maier was the shooter. At trial the witness refused to identify the shooter and claimed to not remember any prior statement implicating Maier. This Court upheld the district court's admission of the witness's prior statements to the police. Admission of the

6

statements did not implicate Maier's right to confrontation because the witness was present at trial and subject to cross-examination. *Maier*, ¶ 30.

¶23    H.B. was present at Baker's trial and was subject to cross-examination. Baker argues that his Confrontation Clause right to cross-examination of H.B. is the crux of his appeal. He asserts that this right was denied because the State did not ask H.B., on direct examination, about each statement she made during the prior recorded interview. Baker contends that this prevented his attorney from cross-examining H.B. on those important points. However, H.B. testified that Baker had touched her "inappropriately" and that an inappropriate touching involved "the private parts." H.B. circled the private parts on a stick figure drawing and said that Baker's inappropriate touching happened when her mother was at work. H.B. also testified that she had not previously told anyone but her mother about the inappropriate touching.

¶24    This testimony by H.B. provided sufficient opening for Baker's attorney to cross-examine about the inappropriate touching, what it entailed, and whether H.B. had told anyone else about it. Baker cannot contend that his confrontation rights were violated because the Spencer statement was introduced after H.B. testified, *Howard*, ¶ 34. As noted, the right to confront includes only the opportunity for cross-examination, but not any guarantee that it will elicit helpful evidence. *Owens*, 484 U.S. at 559, 108 S. Ct. at 842.

¶25    It was clear from the initiation of the prosecution that H.B. had been interviewed by Spencer, that Spencer would testify at trial, and that the recording of the interview would be offered into evidence. Baker's attorney cross-examined H.B. and Spencer about the circumstances of the interview and how it was conducted. Baker's attorney also contended

in closing argument that H.B.'s statement was not reliable and that Spencer's interview techniques were biased.

¶26 Baker has not shown that his attorney was limited in any material way in cross-examining H.B. or Spencer, or that any ruling by the District Court limited his cross-examination. He does not argue that he lacked the necessary information, such as the contents of the Spencer interview, to allow him to conduct cross-examination. There were no apparent restrictions on what Baker's attorney could ask H.B. during cross-examination, about her testimony, her prior interview, or the sexual abuse by Baker. Baker's right to confront the witness against him was not compromised by admission of the video of H.B.'s prior statement.

¶27 Because H.B. and Spencer testified at trial and were subject to cross-examination by Baker's attorney, admission of H.B.'s prior statement did not violate Baker's right to confrontation.

¶28 Baker further contends that admission of H.B.'s statement to Spencer violated several hearsay restrictions of the Montana Rules of Evidence. While admission of prior witness statements may raise hearsay issues, those issues do not necessarily implicate Confrontation Clause issues. *State v. Mizenko*, 2006 MT 11, ¶ 10, 330 Mont. 299, 127 P.3d 458.

¶29 Baker contends that admission of H.B.'s statement was testimonial hearsay and should have been excluded. However, by definition H.B.'s prior statement was not hearsay. Montana Rule of Evidence 801(d)(1), provides that a statement is not hearsay if:

> The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony . . . .

8

M. R. Evid. 801(d)(1). Baker contends that H.B.'s trial testimony was not inconsistent with her prior statement and was therefore inadmissible hearsay.

¶30    Under M. R. Evid. 801(d)(1), testimony is inconsistent with a prior statement when the testimony is marked by "evasion, denial, and inability to remember," *Maier*, ¶ 26; *State v. Devlin*, 251 Mont. 278, 282, 825 P.2d 185, 187 (1991). Further, admission of a prior statement is not barred because it contains assertions which are both consistent and inconsistent with trial testimony. *Howard*, ¶ 31. While some aspects of H.B.'s statement and testimony were consistent, others were not. For example, H.B. gave inconsistent statements about whether someone touched her inappropriately and about whether she had ever told someone other than her mother about such things. During the prior interview, H.B. told Spencer that Baker touched his "privates" into her "privates;" that this happened more than once, that it happened in bed and in the bath, and that it hurt. Baker acknowledges this primary inconsistency, arguing that the prior statement to Spencer contained "the only evidence of sexual abuse that was presented during the entire trial." The prior statement was sufficiently inconsistent and did not constitute hearsay as defined by M. R. Evid. 801(d)(1). Because H.B.'s statement is not hearsay, then Baker's arguments regarding her unavailability under Rule 804 are not pertinent.

¶31    Baker also relies upon Montana Rules of Evidence 613(b), which provides:

> Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon . . . .

M. R. Evid. 613(b). Baker asserts that this required the prosecution to show the prior

9

statement to H.B. and obtain her denial or explanation of it prior to seeking admission of the prior statement. However, M. R. Evid. 613(b) only requires that the witness be available for cross-examination about the statement, its circumstances, and what she remembers about it. *State v. Lawrence*, 285 Mont. 140, 160-61, 948 P.2d 186, 198-99 (1997). In the present case, H.B. was available and was examined and cross-examined about whether she had told her "secret" to anyone besides her mother. She denied any prior statement. And, as noted, the existence and probable use of the prior statement were known from the inception of the prosecution. Therefore, Baker had both the opportunity and the means to elicit information from H.B., and then from Spencer, about the prior statement. Admission of the prior statement did not contravene M. R. Evid. 613(b).

¶32　The District Court did not err in admitting evidence of H.B.'s prior statement.

¶33　Issue Two: Whether there was sufficient evidence to support the conviction.

¶34　The standard of review of the sufficiency of evidence to sustain a conviction is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Yuhas*, 2010 MT 223, ¶ 7, 358 Mont. 27, 243 P.3d 409.

¶35　Baker argues that without evidence of H.B.'s prior statements, there was insufficient evidence to convict him. However, we have determined that H.B.'s prior statements were properly admitted and those statements constitute substantive evidence. *Devlin*, 251 Mont. at 282, 825 P.2d at 187. Therefore, there was sufficient evidence to convict under the criteria set forth in *Yuhas*.

10

¶36     Issue Three: Whether the District Court erred in denying Baker's motion for a new trial.

¶37     After trial Baker obtained a new attorney, who moved for a new trial, requesting that the District Court hold a hearing on the issue of the competency of Baker's trial attorney. Baker concedes that the motion was not timely under § 46-16-702, MCA, but argues that the District Court should have exercised its inherent power to grant relief, *State v. Brummer*, 1998 MT 11, ¶ 35, 287 Mont. 168, 953 P.2d 250. Baker's motion for a new trial was essentially a motion for postconviction relief, seeking a hearing in which he could raise non-record-based claims of ineffective assistance of counsel.

¶38     While *Brummer* recognizes a district court's inherent power to grant a new trial, it does not excuse a defendant from filing a motion for a new trial within 30 days of the verdict as required by § 46-16-702, MCA. In *Brummer*, this Court held that while the district court has inherent power to grant a new trial, "so far as the defendant is concerned, he may move for a new trial, and if he so moves, his motion must be in writing and filed within 30 days of the verdict. . . ." *Brummer*, ¶ 46. There is no provision for extending the 30-day time limit of § 46-16-702, MCA. *State v. McCarthy*, 2004 MT 312, ¶ 42, 324 Mont. 1, 101 P.2d 288.

¶39     The District Court did not abuse it discretion and properly denied the motion for a new trial.

¶40     Issue Four: Whether Baker's attorney provided ineffective assistance at trial.

¶41     Baker argues that he received ineffective assistance of counsel (IAC) at trial. He points to a number of events during the trial, including not filing a motion to suppress Baker's interview with a police officer; not objecting to the testimony of H.B.'s therapist and

11

H.B.'s mother; not allowing Baker to testify; not objecting to the State's closing argument and not moving to dismiss for insufficient evidence.

¶42 To prevail on an IAC claim, the defendant must establish that his attorney's performance was deficient and that the deficiency prejudiced the defense. *Baca v. State,* 2008 MT 371, ¶ 16, 346 Mont. 474, 197 P.3d 948; *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). This Court will address a claim of IAC on direct appeal when the record is sufficient for review. However, when it is not apparent on the face of the record why counsel took a particular course of action, the claim is better raised in a petition for postconviction relief in district court, where a factual record can be developed. *State v. Briscoe*, 2012 MT 152, ¶ 10, 365 Mont. 383, 282 P.3d 657. Claims involving alleged omissions of trial counsel are often ill-suited for consideration on direct appeal. *Briscoe*, ¶ 15.

¶43 The record in the present case does not disclose why Baker's attorney took the actions complained of, and Baker's motion for a new trial acknowledges the need for an evidentiary record. Therefore, we decline to consider Baker's IAC claims on direct appeal, and he may raise those claims in a petition for postconviction relief as provided by law.

¶44 For the reasons stated above, Baker's conviction is affirmed, without prejudice, to his right to bring his claims alleging ineffective assistance of counsel in a petition to the District Court for postconviction relief.

/S/ MIKE McGRATH

We concur:

12

/S/ MICHAEL E WHEAT
/S/ JIM RICE
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS