DA 12-0700

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 143

STATE OF MONTANA,

        Plaintiff and Appellee,

  v.

JIMMY ROGER POUND,

        Defendant and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. BDC 11-358
Honorable Jeffrey M. Sherlock, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

           Wade Zolynski, Chief Appellate Defender, Nicholas Domitrovich, Assistant
Appellate Defender, Helena, Montana

       For Appellee:

           Timothy C. Fox, Montana Attorney General, Tammy K Plubell, Assistant
Attorney General, Helena, Montana

           Leo J. Gallagher, Lewis and Clark County Attorney, Helena, Montana

Submitted on Briefs: April 9, 2014
Decided: June 3, 2014

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 After a four-day trial in June 2012 a jury convicted Jimmy Pound of the offense felony sexual assault under § 45-5-502, MCA. Pound appeals and we affirm.

¶2 Pound presents the following issues for review:

¶3 Issue One: Whether the District Court erred when it found that the victim was unable to testify in open court in the presence of Pound.

¶4 Issue Two: Whether the District Court erred when it allowed the State to present the testimony of a forensic interviewer about the victim's statements that were inconsistent with the victim's trial testimony.

## PROCEDURAL AND FACTUAL BACKGROUND

¶5 In December 2011 the State charged Jimmy Pound with felony sexual assault against his girlfriend's 4-year-old daughter, in violation of § 45-5-502, MCA. A jury found Pound guilty in June 2012 and in September 2012 the District Court designated him a Tier III sexual offender and sentenced him to 75 years in the Montana State Prison with 10 years suspended.

¶6 Prior to trial the State moved pursuant to § 46-16-227, MCA, that the victim, who was then age 5, be allowed to testify outside the presence of Pound. The District Court conducted an evidentiary hearing on the issue and received briefs. Kathleen Shea, a licensed clinical social worker testified based upon her five sessions with the victim. She described the victim as being developmentally younger than her actual age, and as having had little peer interaction. She found that the victim becomes very anxious when separated from her mother. The victim had age-appropriate verbal skills but a limited vocabulary.

2

¶7     The victim described to Shea Pound's sexual contact with her vaginal area, and that it had happened more than once. After making that disclosure, the victim had great difficulty concentrating or focusing. She described chronic nightmares, poor appetite and restlessness. She was hyper-vigilant regarding her mother's safety and had great difficulty separating from her mother. The victim said she was "very afraid" of Pound and became "noticeably anxious" when talking about him. Shea found that the victim acted very differently when talking about Pound. She became agitated, stopped talking and stopped making eye contact. Shea testified that the victim had her own genuine fear of Pound.

¶8     Shea concluded that the victim would likely "freeze" if called to testify "in front of any of us" but especially in front of Pound. Shea concluded that it was likely that the victim would be unable to testify in Pound's presence and that forcing her to do so would likely lead to substantial emotional distress.

¶9     Based upon the hearing testimony concerning the victim and her relationship with Pound, the District Court found that the victim acts younger than her stated age and that testifying in front of Pound would cause her "a great deal of fear." The District Court found that this fear would prevent the victim from testifying and could cause her "substantial emotional distress, setting back her therapy." The District Court found that the victim described suffering trauma inflicted by Pound and that he had hurt her a great deal.

¶10    The District Court concluded "by clear and convincing evidence that the child would be unable to testify in open court in the presence of Defendant and that the child would suffer substantial emotional trauma from testifying in the presence of Defendant." The District Court ordered that the victim's testimony be given in a separate room attended by

3

the judge, both attorneys and the court reporter. Pound and the jury would watch the victim's testimony in real time by an audio-video device. The District Court further ordered that Pound have a "means of immediate private communication with his attorney during the testimony."

At trial the victim was a reluctant witness. On direct examination she testified that someone had "bothered" her but that she did not remember his name. She said she had nothing to tell the court about Pound and that he had not "bothered" her. She said, however, that she was "too scared" to tell the truth about Pound. The victim testified:

Q. So are you willing to tell -- can you tell the
judge the truth? Is that a yes or a no?
A. Yes.
Q. So tell the Judge what the truth is.
A. I don't remember.
Q. You don't remember. Okay. Do you remember what
the truth is about? No?
A. Huh-uh.
Q. Have you talked to anyone else about the truth?
A. No.
Q. No?
A. Except my grandma.
Q. Except my grandma? What did you tell your
grandma?
A. That Jimmy touched my privates.
Q. Can you say that louder?
A. Jimmy touched my private.
Q. So I want to make sure that I get what you said.
Did you say, "Jimmy touched my private?"
A. Yeah.
Q. And do you remember this drawing that we were
talking about earlier?
A. Yeah.
Q. Can you show me on there, will you circle where
your private area is?
A. Right there.

4

Q. You're pointing right there? Can you circle it
or put a dot or an X on it?
A. (Indicating.)
Q. Thank you.
So when Jimmy touched your private, what did
he touch your private with?
A. Finger.
Q. Finger?
A. Yeah.
Q. Whose finger?
A. Jimmy's.
Q. Jimmy's finger?
A. Yeah.
Q. What did it feel like when Jimmy touched your
private with his finger?
A. I don't know.
Q. You don't know?
What was Jimmy wearing when he touched your
private with his finger?
A. Nothing.
Q. Nothing.
Q. Where -- what were you wearing when Jimmy
touched your private with his finger?
A. My pajamas.
Q. Your pajamas? What did your pajamas look like? Can you
say that again?
A. What?
Q. Sorry. Very good. You said, "What?" You're a
good listener. Can you tell me what your pajamas looked like.
A. They have skulls on it.
Q. Skulls on it?
A. Yeah.
Q. What are skulls?
A. Bones.
Q. Bones? Did you say what the color was earlier? What color were they?
A. Different colors on the bones.
Q. Did you say balloons or bones?
A. Bones. And then the bones were different colors.


¶11    She persistently responded to questions by saying she could not remember, but said

that she had told the truth to her grandma.  She testified that she told her grandma that Pound

5

had used his finger and "touched my privates." She described the pajamas she was wearing and said that the touching happened at the "brick house."

¶12 Defense counsel asked the victim if she remembered talking to the forensic examiner Paula Samms, but she did not. She said that her grandma had told her to tell the truth, and after agreeing with many things the attorney asked, said "I'm getting bored."

¶13 After the victim testified the State offered the testimony of Paula Samms, a forensic interview specialist, and director of the County Child Advocacy Center. Samms had conducted an interview with the victim in which the victim had described Pound's sexual conduct with her. The defense objected to any testimony from Samms about what the victim had told her on the ground that the State had not shown the victim her prior statement and had not questioned her about the prior statement. The defense also objected to Samms' testimony as a violation of the right of confrontation.

¶14 After hearing arguments, the District Court concluded that Samms could testify about the victim's statements that were inconsistent with the victim's trial testimony, but that the State could not introduce the entire interview.

¶15 Samms testified that the victim told her that Pound had used "slippity stuff" when he touched her privates and that it tickled. Samms testified that the victim told her that Pound had torn a hole in the crotch of her pajamas. Samms testified that the victim said she had watched "sexy" movies with Pound, and remembered seeing two girls kiss.

¶16 The State also presented the testimony of a neighbor who had babysat for the victim. The neighbor testified about the victim's pajamas with the hole in the crotch, and the victim's statement to her that Pound had caused the hole and "needs to stop touching me."

6

The victim told the babysitter that Pound had touched her three times. The babysitter's testimony is not at issue on appeal.

## STANDARD OF REVIEW

¶17 A district court has broad discretion to determine the relevancy and admissibility of evidence, and this Court will not overturn evidentiary rulings absent a showing of abuse of discretion. *State v. Lotter*, 2013 MT 336, ¶ 13, 372 Mont. 445, 313 P.3d 148; *State v. Berosik*, 2009 MT 260, ¶ 28, 352 Mont. 16, 214 P.3d 776. We review a district court's application of a statute or rule of evidence de novo to determine whether it is correct. *Lotter*, ¶ 13. A court abuses its discretion if it acts arbitrarily without employment of conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice. *State v. Breeding*, 2008 MT 162, ¶ 10, 343 Mont. 323, 184 P.3d 313.

¶18 We review a district court's conclusions of law to determine whether they are correct. *Olson v. Jude*, 2003 MT 186, ¶ 34, 316 Mont. 438, 73 P. 3d 809. We review a district court's findings of fact to determine whether they are clearly erroneous. *Brimstone Mining, Inc. v. Glaus*, 2003 MT 236, ¶ 20, 317 Mont. 236, 77 P.3d 175. A finding of fact may be clearly erroneous if it is not supported by substantial evidence in the record; if the district court misapprehended the evidence; or when our review of the record leaves this Court with the definite and firm conviction that a mistake has been committed. *Brimstone*, ¶ 20.

¶19 The district court is in the best position to observe and determine the credibility of witnesses and we will not second guess its determination regarding the strength and weight of conflicting testimony. *Tomlin Enterprises, Inc. v. Althoff*, 2004 MT 383, ¶ 22, 325 Mont. 99, 103 P.3d 1069; *Shors v. Branch*, 221 Mont. 390, 399, 720 P.2d 239, 245 (1986). On

7

appeal the district court's findings of fact are construed in favor of the prevailing party, *Tomlin*, ¶ 22, and the district court's findings will be upheld even if the evidence could have supported different findings. *Brimstone*, ¶ 20.

¶20 This Court exercises de novo plenary review of a district court's decision on constitutional issues. *State v. Baker*, 2013 MT 113, ¶ 17, 370 Mont. 43, 300 P.3d 696.

**DISCUSSION**

¶21 Issue One: Whether the District Court erred when it found that the victim was unable to testify in open court in the presence of Pound.

¶22 Section 46-16-227, MCA, provides that upon motion, the district court shall conduct a hearing to "consider whether the testimony of a child witness may be taken outside the presence of the defendant and communicated to the courtroom by two-way electronic audio-video communication." The district court is required to consider a non-exclusive list of factors found in § 46-16-228(3), MCA, including "any other matter that the court considers relevant." The district court may order that the child testify outside the presence of the defendant if it finds by "clear and convincing evidence that the child witness is unable to testify in open court in the presence of the defendant . . . ." Section 46-16-229(1), MCA. The district court must conclude that the child witness is unable to testify because of fear caused by being in the presence of the defendant; because the child would suffer emotional trauma from testifying in the presence of the defendant; or if the conduct of the defendant or the defendant's attorney causes the child to be unable to continue testifying. Section 46-14-229(1), MCA; *State v. Stock*, 2011 MT 131, ¶¶ 19-21, 361 Mont. 1, 256 P.3d 899.

8

¶23    In this case the State filed the motion under § 46-16-227, MCA, and the District Court held the hearing and issued a written order. The District Court's order specifically considered each of the factors set forth in § 46-16-228(3), MCA. The District Court's order concluded that the victim would be unable to testify in the presence of Pound and that she would suffer "substantial emotional trauma" if forced to do so.

¶24    Pound contends that the District Court abused its discretion by ordering that the victim testify outside of his presence, "choosing to adopt the most extreme version" of Shea's testimony. Pound contends that the District Court ignored conflicts in the facts and reached only "conclusory assumptions" regarding the victim.

¶25    The District Court is in the best position to observe and determine the credibility of witnesses and we will not second guess its determination regarding the strength and weight of conflicting testimony. *Tomlin*, ¶ 22; *Shors*, 221 Mont. at 399, 720 P.2d at 245. We construe the District Court's findings of fact in a light favorable to the prevailing party, *Tomlin*, ¶ 22, and the findings will be upheld even if the evidence could have supported different findings. *Brimstone*, ¶ 20.

¶26    In this case the District Court properly and carefully followed the statutory requirements set out in §§ 46-16-227, -228 and -229, MCA. The District Court heard and evaluated the testimony, considering the factors in § 46-16-228(3), MCA, as they were relevant to this case. Based upon the evidence the District Court found that the victim would be unable to testify in Pound's presence because of the fear it would cause her, and that forcing her to testify in his presence would cause her substantial emotional trauma. Section 46-16-229, MCA. We do not agree that the District Court mischaracterized or overstated

9

Shea's testimony. We will not second-guess the District Court's evaluation of the testimony and will not reverse because the evidence might have supported other findings or conclusions.

¶27 There was no abuse of discretion and we conclude that the District Court did not err in ordering that the child victim testify outside the presence of Pound.

¶28 Issue Two: Whether the District Court erred when it allowed the State to present the testimony of a forensic interviewer about the victim's statements that were inconsistent with the victim's trial testimony.

¶29 While the State offered the entire transcript of forensic examiner Samms' interview with the victim, the District Court allowed only those portions that were inconsistent with the victim's testimony at trial. Pound contends that the District Court erred by admitting Samms' testimony about statements the victim made to her. Pound contends that the State failed to provide notice of its intent to have Samms testify about the victim's statements to her and failed to lay a proper foundation for Samms' testimony during the direct examination of the victim. Pound also contends that Samms' testimony about the victim's statements to her violated M. R. Evid. 613 and 801, and violated his constitutional right to confront witnesses against him.

¶30 Both Article II, Section 24 of the Montana Constitution and Amendment VI of the United States Constitution provide a defendant with the right to confront or to face the witnesses against him. *State v. Maier*, 1999 MT 51, ¶ 18, 293 Mont. 403, 977 P.3d 298; *Stock*, ¶ 23. The essential purpose of the right to confront witnesses is to secure the

opportunity to test the witness' testimony through cross-examination. *Delaware v. Van Arsdall*, 475 U.S. 673, 678, 106 S. Ct. 1431, 1435 (1986); *Stock*, ¶ 26..

¶31 The right to confrontation "includes no guarantee that every witness called by the prosecution will refrain from giving testimony that is marred by forgetfulness, confusion or evasion." *United States v. Owens*, 484 U. S. 554, 558, 108 S. Ct. 838, 842 (1988). The right to confront includes the opportunity for cross-examination, but not any guarantee that it will elicit helpful evidence. *Owens*, 484 U. S. at 558, 108 S. Ct. at 842.

¶32 Both Federal and State decisions establish that the right to confront witnesses is not violated when a testifying witness's prior statement is admitted into evidence. *California v. Green*, 399 U. S. 149, 90 S. Ct. 1930 (1970); *Maier*, ¶ 44. When a witness appears at trial and is available for cross-examination, the right to confrontation does not constrain admission of prior testimonial statements by the witness. *State v. Howard*, 2011 MT 246, ¶ 33, 362 Mont. 196, 265 P.3d 606 (*citing Crawford v. Washington*, 541 U. S. 36, 124 S. Ct. 1354 (2004)).

¶33 Montana Rule of Evidence 801(d)(1)(A) provides that a statement is not hearsay if it is a prior statement by a witness who testifies at trial subject to cross-examination, and the prior statement is *inconsistent* with the witness's testimony. It is established that a "claimed lapse of memory is an inconsistency within the meaning of Rule 801(d)(1)(A)." *State v. Lawrence*, 285 Mont. 140, 159, 948 P.2d 186, 198 (1997). Similarly, direct testimony that is marked by "evasion, denial, and inability to remember," or is "evasive and uncooperative" can be an inconsistent statement under the same rule. *Maier*, ¶¶ 26-28. Montana Rule of Evidence 613(b) provides that extrinsic evidence of a prior inconsistent statement is not

11

admissible unless the witness is afforded the opportunity to explain or deny it and the opposing party has an opportunity to interrogate the witness on it, or if "the interests of justice otherwise require."

¶34 It is clear that Pound knew about the Samms interview and about its contents from the inception of the case. The existence of the Samms interview of the victim and a detailed summary of the contents of the interview were set out in the affidavit filed in support of the motion for leave to file the information. The information charging Pound listed Samms as a witness. Therefore, there was no lack of notice or failure to disclose with regard to the Samms interview or its contents.

¶35 Pound contends that the State failed to lay a proper foundation for Samms' testimony during its direct examination of the victim. Pound contends that the State failed to afford the victim an opportunity to explain or deny the contents of her prior statement to Samms, as required by M. R. Evid. 613(b). Pound contends in turn that the State's limited direct examination of the victim precluded him from effectively cross-examining her or Samms regarding the Samms interview.

¶36 During the State's direct examination of the victim she testified that Pound ("Jimmy") had touched her privates with his finger, but that she did not remember how it felt, and that her pajamas were ripped. She testified that she was scared to tell the truth and could not remember the truth. She testified that Pound had touched her in a brick house and denied that she had ever watched movies with him. She testified that her grandmother was the only person she had ever talked to about Pound and that she had never told anyone else the truth about him. On cross-examination, the defense asked the victim if she remembered talking to

12

Samms and the victim said "no" but remembered talking several times with "Tara." She denied ever having gone into a room like the one in which the Samms interview took place. She was asked whether she made a number of specific statements that were in the Samms interview. She both admitted and denied making most of them. She acknowledged telling Samms that Pound had touched her "pee pee."

¶37 Several things are clear from the victim's testimony. It was clearly marked by "evasion, denial [and] inability to remember" as described in *Maier*, ¶¶ 26-28. Because the victim gave different and more consistent responses to many of the same questions in the interview with Samms, those responses were prior inconsistent statements as provided for in M. R. Evid. 801(d)(1)(A). *Lawrence*, 285 Mont. at 159, 948 P.2d at 198. In *State v. Baker*, 2013 MT 113, 370 Mont. 43, 300 P.3d 696, this Court examined a situation similar to the present case. Baker was charged with sexual contact with his girlfriend's daughter when she was about age 4. The victim was interviewed by a forensic examiner and told her that Baker had touched her in a bad way and had put his privates into her privates. At trial she testified that Baker was mean, but that what he did was a secret that she could not tell. She testified that she had told the secret only to her mom and that she did not recall the forensic interview. The district court allowed the State to play a recording of the forensic interview to the jury.

¶38 Baker made the same contentions as Pound now makes, arguing that the State failed to lay a sufficient foundation during its direct examination of the victim, and that this failure prevented defense counsel from conducting effective cross-examination. This Court concluded that the State's direct examination of the victim provided sufficient foundation for introduction of an inconsistent statement, and that it provided "sufficient opening" for

13

defense counsel to conduct an effective cross-examination. *Baker*, ¶¶ 23-26. This Court reached the same result under similar facts in *State v. Howard*, 2011 MT 246, ¶ 33, 362 Mont. 196, 265 P.3d 606. In the present case there was sufficient foundation that the victim denied or could not remember her prior statements to Samms. The victim's prior statements to Samms were inconsistent with her trial testimony and were therefore admissible.

¶39 It is also clear that admission of a prior statement that is inconsistent with a witness's trial testimony, pursuant to M. R. Evid. 613(b) and 801(d)(1)(A), is not a violation of an accused's constitutional right of confrontation. It is established that when a witness is available for cross-examination at trial, the confrontation clause does not prohibit admission of extrinsic evidence of prior inconsistent statements. *Maier*, ¶ 21, citing *Green*, *Owens*, and *Baker*, ¶ 26. It is not a violation of the right of confrontation if the prior inconsistent statement is introduced into evidence after the testimony of the witness in question. *Howard*, ¶ 33. The District Court limited Samms' testimony to the victim's statements that were inconsistent with her trial testimony. Therefore, the State did not get to present the victim's same testimony twice.

¶40 The District Court properly applied established Montana law in this case and did not abuse its discretion. The conviction is affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ JIM RICE
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ LAURIE McKINNON

14