FILED

03/28/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0589

DA 20-0589

IN THE SUPREME COURT OF THE STATE OF MONTANA

2023 MT 53N

STATE OF MONTANA,

       Plaintiff and Appellee,

   v.

RYAN PATRICK SULLIVAN,

       Defendant and Appellant.

APPEAL FROM:   District Court of the Thirteenth Judicial District,
                    In and For the County of Yellowstone, Cause No. DC 19-0829
                    Honorable Michael G. Moses, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

            Chad Wright, Appellate Defender, Deborah S. Smith, Assistant
            Appellate Defender, Helena, Montana

       For Appellee:

            Austin Knudsen, Montana Attorney General, Roy Brown, Assistant
            Attorney General, Helena, Montana

            Scott D. Twito, Yellowstone County Attorney, Benjamin J. Halverson,
            Deputy County Attorney, Billings, Montana

                          Submitted on Briefs:  October 26, 2022

                                  Decided:  March 28, 2023

Filed:

                      _____
                                Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent.  Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     Ryan Patrick Sullivan (Sullivan) appeals from Thirteenth Judicial District Court convictions for tampering with witnesses and informants and privacy in communications (PIC) violations.  We affirm.

¶3     On November 14, 2018, Sullivan received a deferred five-year sentence for assault of his girlfriend, M.A., in Cause No. DC 18-321.  In March 2020, on the basis of numerous objectionable communications Sullivan had subsequently made to M.A., the State brought new charges (Cause No. DC 19-829) of one count of felony tampering, four counts of PIC, and two counts of misdemeanor PIC.  The District Court denied Sullivan's motion in limine to exclude from trial any reference to Sullivan's prior conviction in DC 18-321 under M. R. Evid. 403 and 404(b), as well as his motion to dismiss the PIC counts as unconstitutionally overbroad.  The District Court dismissed two counts of PIC for lack of jurisdiction.  At the end of the State's case, Sullivan moved to dismiss the remaining charges for insufficient evidence.  He further argued that his communications were protected speech under the First Amendment.  The District Court denied these motions.

The jury found Sullivan guilty of tampering with a witness or informant and guilty of three counts of PIC and not guilty of one count of PIC.

¶4 For the tampering count, the District Court sentenced Sullivan to ten years at Montana State Prison, all suspended, to run concurrently with the sentence in DC 18-321. For the PIC counts, the court imposed shorter, suspended sentences, running concurrently with the tampering sentence.

¶5 On appeal, Sullivan argues that (1) the tampering charge should have been dismissed as there was no pending proceeding at the time of Sullivan's message requesting that M.A. delete his texts, (2) the PIC convictions must be overturned as the 2017 version of the PIC statute is unconstitutionally overbroad on its face and as applied to Sullivan, and (3) the District Court erroneously allowed the State to present evidence relating to Sullivan's underlying aggravated assault conviction in DC 18-321.[1]

¶6 This Court reviews de novo whether sufficient evidence supports a conviction. *State v. Lamoureux*, 2021 MT 94, ¶ 10, 404 Mont. 61, 485 P.3d 192; *State v. Polak*, 2018 MT 174, ¶ 14, 392 Mont. 90, 422 P.3d 112. Constitutional questions receive plenary review and we examine a district court's interpretation of law for correctness. *Lamoureux*, ¶ 10. We review a district court's decision to admit evidence of prior bad acts under M. R. Evid. 404(b) and 403 for abuse of discretion, though interpretation of an evidentiary rule or

---

[1] In the alternative, Sullivan asks us to remand with instructions for the District Court to correct the written judgment to conform to the orally-pronounced sentence. We addressed this issue in another appeal, and do not address it in a duplicative fashion here. *See State v. Sullivan*, No. DA 20-0588, 2023 MT 4N, 2023 Mont. LEXIS 16.

statute is reviewed de novo. *State v. Lake*, 2022 MT 28, ¶ 23, 407 Mont. 350, 503 P.3d 274.

Insufficiency of Evidence

¶7     Sullivan contends that the District Court erroneously denied his motions to dismiss the tampering and PIC charges for insufficiency of the evidence.  A charge must be dismissed for insufficiency of evidence if, after reviewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Yuhas*, 2010 MT 223, ¶ 7, 358 Mont. 27, 243 P.3d 409. *See also* § 46-16-403, MCA. We conclude after reviewing the evidence that the state presented sufficient evidence to support Sullivan's conviction.

¶8     Section 45-7-206(1), MCA, provides in relevant part that:

> A person commits the offense of tampering with witnesses and informants if, believing that an official proceeding or investigation is pending or about to be instituted, the person purposely or knowingly attempts to induce or otherwise cause a witness or informant to:

.   .   .

(b) withhold any testimony, information, document, or thing[.]

¶9     At trial, the State admitted a June 14, 2019 letter from Sullivan to M.A. containing the following sentence: "In August I am going to see if I can get of[f] probation so if you could delete all our calls texts emails etc. that might be helpful."  Sullivan argues that the State failed to provide evidence identifying an "official proceeding" under § 45-7-206(1), MCA, contending that he was not eligible to petition for early discharge and that the State had not prosecuted him for violating a no-contact order at the time of the letter.  However,

the plain language of § 45-7-206(1), MCA, did not require the State to prove that an official proceeding was *actually* pending against Sullivan, only that Sullivan "believe[d]" that an official proceeding or investigation was pending or about to be instituted.[2]  His June 2019 letter clearly indicated that he believed that he would have an opportunity "[i]n August" to petition to "get of[f] probation" for which the destruction of the information contained in his "calls texts emails etc." evidencing his illicit contacts with M.A. "might be helpful."  A rational trier of fact could have concluded that Sullivan believed that "an official proceeding or investigation [wa]s pending or about to be instituted" when he made the request.  The District Court correctly denied Sullivan's motion to dismiss the tampering charge for insufficient evidence.

¶10    Next, Sullivan argues that the PIC statute under which he was charged, § 45-8-213(1), MCA (2017), is facially unconstitutional and unconstitutional as applied to Sullivan.  Section 45-8-213(1), MCA (2017), provides in relevant part that:

> [a] person commits the offense of violating privacy in communications if the person knowingly or purposely:
>
> (a) with the purpose to terrify, intimidate, threaten, harass, annoy, or offend, communicates with a person by electronic communication and uses obscene, lewd, or profane language, suggests a lewd or lascivious act, or threatens to inflict injury or physical harm to the person or property of the person.

---

[2] In his reply brief, Sullivan also argues that a petition for early discharge does not qualify as an "official proceeding" under § 45-7-206(1)(b), MCA, because § 46-18-208, MCA (2017), makes a hearing optional for such a petition, while the jury instructions defined an "official proceeding" as requiring that the proceeding may be heard before a government body that is "authorized to take evidence under oath."  Even if the body that hears petitions for early termination of probation was not "authorized to take evidence under oath," the elements of the tampering statute, as noted above, only require that Sullivan "believe[d]" that a proceeding before such a body was pending.

Sullivan takes issue with the words, "harass, annoy, or offend," which he argues renders the statute unconstitutionally overbroad as it sweeps up significant amounts of speech protected by the First Amendment of the United States Constitution and Article II, Section 7, of the Montana Constitution.[3]

¶11 The State responds that the statute's facial constitutionality has already been decided in *Lamoureux*, ¶¶ 20-23, where we held that the purpose element of § 45-8-213(1), MCA (2017), did not unconstitutionally criminalize free speech. Sullivan asks us to reconsider *Lamoureux* and hold that the statute's reference to speech made with the purpose to "harass, annoy, or offend" a victim is unconstitutionally overbroad. The doctrine of stare decisis provides a strong preference for maintaining a precedent despite viable alternatives, but does not require us to follow a "manifestly wrong" decision. *Beckman v. Butte-Silver Bow Cty.*, 2000 MT 112, ¶ 20, 299 Mont. 389, 1 P.3d 348; *McDonald v. Jacobsen*, 2022 MT 160, ¶ 30, 409 Mont. 405, 515 P.3d 777. Legislative enactments are presumed constitutional, and the challenger must show its unconstitutionality beyond a reasonable doubt. *State v. Egdorf*, 2003 MT 264, ¶ 12, 317 Mont. 436, 77 P.3d 517.

¶12 The State also points to our earlier case, *State v. Dugan*, 2013 MT 38, 369 Mont. 39, 303 P.3d 755—where we struck down the statutory section's prima facie provision as violative of the First Amendment—pointing to our statement that, "[w]ith the prima facie provision invalidated," the PIC statute "legitimately encompasses

---

[3] While Sullivan challenges the statutory terms of "harass, annoy, or offend," he does not challenge the alternative intents of "terrify, intimidate, [or] threaten."

only . . . communications . . . [that] can be proscribed without violating" constitutional free speech. *Dugan*, ¶¶ 63-64. However, the contested point in *Dugan* was only the prima facie clause—not at issue here— rather than the purpose element challenged in *Lamoureaux* and this case.

¶13 Sullivan argues that harassing, annoying, or offensive speech does not fall within any recognized exception to free speech protections. Sullivan misses, however, the key distinction the United States Supreme Court has drawn between (1) speech directed to a public audience, which is generally protected even if some members of the public find the speech highly objectionable, and (2) speech directed to a single, unwilling, recipient, which is generally unprotected. *Compare Rowan v. United States Post Office Dep't*, 397 U.S. 728, 738, 90 S. Ct. 1484, 1491 (1970) (upholding ban on certain mailings sent to people who demanded that the mailer stop sending them mail, holding that "[n]o one has a right to press even 'good' ideas on an unwilling recipient") *with Organization for a Better Austin v. Keefe*, 402 U.S. 415, 420, 91 S. Ct. 1575, 1578 (1971) (holding that plaintiff could not seek to enjoin defendants from distributing leaflets critical of plaintiff in the neighborhood, concluding that an "important distinction[]" from *Rowan* was that plaintiff was "not attempting to stop the flow of information into his own household, but to the public"). Thus, the specific intent provision of § 45-8-213(1), MCA (2017), renders the statute constitutional under *Rowan* because it criminalizes only speech directed to a clearly unwilling recipient, not to the public at large. *See Hill v. Colorado*, 530 U.S. 703, 120 S. Ct. 2480 (2000); *Frisby v. Schultz*, 487 U.S. 474, 486, 108 S. Ct. 2495, 2503 (1988). *Lamoureux's* conclusion supports our decision to uphold the District Court here.

7

¶14 Sullivan further argues that § 45-8-213(1), MCA (2017), is unconstitutional as applied to him. However, we conclude that Sullivan's communications to M.A. fall within the bullseye of speech that this statute may constitutionally prohibit, as the State provided ample evidence that Sullivan's repeated communications were constitutionally-unprotected contacts or threats or directed to M.A. individually, against her wishes. *See Virginia v. Black,* 538 U.S. 343, 359, 123 S. Ct. 1536, 1548 (2003) (true threats First Amendment exception (citing *Watts v. United States*, 394 U.S. 705, 89 S. Ct. 1399 (1969)); *Rowan*, 397 U.S. 728, 90 S. Ct. 1484; *Lamoureux*, ¶¶ 20-23. When M.A. tried to block Sullivan through one messaging medium, Sullivan would try another. Sullivan called her so frequently, using various phone numbers, that M.A.'s phone was "constantly ringing," which M.A. found "frightening." Sullivan also sent M.A. messages through Facebook messenger, text, and email, and repeatedly attempted to contact her through video chat calls, which she did not answer. The messages indicated that Sullivan knew that M.A. did not wish to speak with him, stating, "[y]ou continue to disrespect me b[]y hanging [u]p" and "[y]ou can't even answer the phone." Moreover, the content of the messages was so demeaning that there was no possibility that Sullivan could have believed such messages to be welcome. M.A. testified that she found his messages "horrible," "vulgar," and "violent" and that, importantly, Sullivan knew such messages were "upsetting" to her, used them as part of a successful effort to frighten her, and would "do anything to get a rise out of" M.A. The State's evidence and argument at trial clearly demonstrated that Sullivan intentionally directed threatening speech to an individual who he knew did not wish to receive it. Such speech is clearly unprotected under *Black*,

*Lamoureux,* and *Rowan* and the District Court did not err in denying Sullivan's motion to dismiss for insufficient evidence on that basis.

Evidentiary Ruling

¶15 Finally, Sullivan argues that the District Court erred in denying his motion to exclude evidence relating to the 2018 assault of M.A. in DC 18-321. Sullivan challenges the District Court's reliance on *State v. Haithcox*, 2019 MT 201, 397 Mont. 103, 447 P.3d 452, where we held that the Transaction Rule was properly used to admit evidence of the abusive nature of the defendant's relationship with his alleged victim in order to demonstrate the "cycle of violence" in abusive partner relationships, providing both motive for the defendant's assault—the "tension building up to the assault"—and explaining the victim's "otherwise perplexing behavior" in failing to immediately go to a nearby police station after the attack. *Haithcox*, ¶¶ 18-19. The Transaction Rule, § 26-1-103, MCA, provides that "[w]here the declaration, act, or omission forms part of a transaction which is itself the fact in dispute or evidence of that fact, such declaration, act, or omission is evidence as part of the transaction." The rule "allows admission of evidence that," though not directly relevant to the essential elements of the charged offense under M.R. Evid. 401 and 402, is "necessary to provide a comprehensive and complete picture of the commission of a crime" without unnecessarily stilting the ability of witnesses to provide a natural narrative. *State v. Stout*, 2010 MT 137, ¶ 38, 356 Mont. 468, 237 P.3d 37 (internal quotation marks and citation omitted); *State v. Lamarr*, 2014 MT 222, ¶ 13, 376 Mont. 232, 332 P.3d 258. Sullivan argues that, unlike in *Haithcox*, his 2019 communications

9

underlying the PIC and tampering charges were not sufficiently related to his 2018 assault on M.A.

¶16 Evidence regarding Sullivan's physically and emotionally abusive relationship with M.A., including the 2018 assault forming the basis of the DC 18-321 case, was sufficiently relevant under Rules 401 and 402 and the Transaction Rule as to whether Sullivan had the requisite mental state under the PIC statute of acting with the purpose to "terrify, intimidate, threaten, harass, annoy, or offend" M.A. through his subsequent 2019 communications. This evidence showed that Sullivan would have known that M.A. was emotionally vulnerable to his intimidating and threatening communications.[4] The District Court did not incorrectly apply *Haithcox* or abuse its discretion in denying Sullivan's motion to categorically exclude any reference to his conviction under DC 18-321 or "alleged acts involving complainant, M.A." and ruling that such evidence "describing the underlying relationship" between Sullivan and M.A. was admissible for non-propensity purposes. *See* M. R. Evid. 404(b) (evidence of other bad acts may not be used for the purpose of proving bad character and "conformity therewith").

¶17 Sullivan also argues, however, that the State exceeded the limits of the District Court's Order, unfairly prejudicing him by eliciting lengthy testimony from M.A.

---

[4] Moreover, evidence of the fact of the conviction under DC 18-321 and resulting probation was relevant to the question of whether Sullivan believed that an "official proceeding" was imminent regarding his probation status as relevant to the tampering charge under § 45-7-206(1)(b), MCA. The abusive nature of his relationship with M.A. evidenced reason for him to believe he might be successful in his efforts to "induce" M.A. to "withhold . . . information" on his behalf. *See* § 45-7-206(1)(b), MCA; *Haithcox*, ¶ 18 (admitting evidence of prior acts without which "the jury may have had difficulty comprehending Haithcox's motive").

10

recounting details of Sullivan's assault.[5]  Even when a district court properly rejects a motion in limine to categorically exclude an entire topic, it may still be error under M. R. Evid. 403 to allow the State to go beyond the limits of the order and present highly prejudicial material with limited probative value.  *See Lake*, ¶ 31 (while the district court did not err in denying defendant's motion in limine to categorically exclude all references to objectionable items, "the relative probative value of the specific manner and frequency in which the State referenced and elicited witness references to them at trial is another matter under M. R. Evid. 403").[6]

¶18   The State elicited testimony from M.A. that police were "[t]ypically" called to her home because Sullivan was "aggressive, breaking things, having a tantrum."  In regard to the 2018 assault, M.A. recounted returning home to a "dangerous" and "angry" Sullivan, who "hit [her] in the face multiple times," ripped the handle off of the refrigerator, and took her phone (which she described as her "only lifeline").  M.A. testified that Sullivan grabbed her by the throat, began choking her (leaving bruises), pushed her onto the top of the dog kennel so hard that he bent the kennel, and told her "he was going to cut [her] up in the bath tub and watch [her] bleed out."  She testified that Sullivan then "let [her] sit" by the window for a few hours, during which time she attempted in vain to signal passerby for help.  Eventually Sullivan sent her to the store to buy him more beer, allowing her to

---

[5] Sullivan notes that, at one point, while discussing another matter, the court remarked that it believed its order to have been "fairly simple" and that the State "went way too far," apparently in reference to some of this testimony.

[6] A defendant who has already made a motion in limine to exclude all such evidence is not required to renew his or her objection to the State's evidence at trial to preserve the issue. *Lake*, ¶ 34.

take her phone. M.A. returned, wondering whether she could make it to her gun "before [Sullivan could] get to" her. M.A. testified that she tried to get Sullivan to leave, which led to him kicking her in the stomach and pushing her into the closet doors, breaking them. M.A. managed to text a friend to call the police. Upon learning that police were coming, Sullivan fled the residence. After police left, M.A. and her friend attempted to barricade the front door that night, which would not lock since it had been kicked in by Sullivan during a prior incident.

¶19 Sullivan contends that M.A.'s detailed testimony regarding the 2018 assault was both prejudicial and only minimally probative to the PIC and tampering charges stemming from his offending communications in 2019, pointing to *State v. Smith*, 2020 MT 304, 402 Mont. 206, 476 P.3d 1178. Unnecessarily continuing to elicit the details of Sullivan's attack on M.A. or the plight of domestic violence victims, generally, potentially raises a concern of increasing unfair prejudice with accompanying diminishing marginal probative gains under Rule 403. *See Lake*, ¶¶ 35, 41-42 (discussing availability of "less prejudicial but equally probative evidence" or use of "more generic testimony"; prior bad acts evidence must be "clearly justified and carefully limited" (emphasis omitted)); *Smith*, ¶ 22 (necessary elements of a tampering charge could "likely have been accomplished through stipulation or other means" than the "in-depth discussion on domestic violence and its impact on victims and society" brought by the State). However, in this particular case, we do not conclude that the District Court abused its discretion by failing to cut off such testimony. Unlike in *Smith*—where the trial court erroneously admitted irrelevant evidence under an incorrect theory of witness impeachment—here, the challenged evidence was

12

sufficient to be admitted under the Transaction Rule as context to evidence supporting the State's proffered non-propensity purposes that: (1) Sullivan's assault led to a no-contact order, the violation of which motivated Sullivan to engage in witness tampering, and (2) Sullivan's offending communications with M.A. were made in the context of an abusive relationship, which evidenced Sullivan's requisite intent to intimidate and terrify by sending such communications, explained M.A.'s otherwise perplexing responses, and illuminated Sullivan's potential motivation.[7]  The State's closing argument here made no mention of the assault, and its opening argument only briefly mentioned it in reference to its argument that Sullivan's actions and words during the attack rendered specific subsequent communications with M.A. more intentionally hurtful as charged under the PIC statute and that the resulting guilty plea formed the basis for his probation violations motivating Sullivan to engage in tampering.

¶20     Here, we cannot conclude that the State used the challenged evidence for an improper purpose under Rule 404(b) or that the danger of unfair prejudice under Rule 403 had risen so high that the District Court abused its discretion and prejudiced Sullivan's right to a fair trial by failing to cut off further testimony; particularly given that the District Court twice instructed the jury on prior bad acts evidence.

---

[7] Sullivan also raises the testimony of the State's blind expert witness who testified as to the emotional impacts of verbal abuse in a partnership.  This evidence was relevant to the element of the PIC statute requiring the State to prove that Sullivan's communications were made with the purpose to "terrify, intimidate, threaten, harass, annoy, or offend."  She also explained the tendency of such victims to return to their abuser, notwithstanding the harmful nature of the abuse, as relevant to the defense's contention that M.A.'s behavior showed that the two were in a mutually-toxic relationship such that the communications did not reach the level of a PIC violation.

13

¶21 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶22 Affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR
/S/ JIM RICE