DA 13-0287

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 152

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

JUDITH HOLLY BEAUDET,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC 12-478
Honorable Robert L. Deschamps, III, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Wade Zolynski, Chief Appellate Defender, Eileen A. Larkin, Assistant
Appellate Defender, Helena, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, Katie F. Schulz, Assistant
Attorney General, Helena, Montana

          Fred Van Valkenburg, Missoula County Attorney, Jennifer Clark, Deputy
County Attorney, Missoula, Montana

Submitted on Briefs:  May 14, 2014
Decided:  June 10, 2014

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     Judith Holly Beaudet appeals from her conviction of three counts of misdemeanor cruelty to animals in the Fourth Judicial District Court, Missoula County. We affirm.

¶2     Beaudet presents the following issues for review:

¶3     *Issue One: Whether the State presented sufficient evidence to allow a rational trier of fact to find beyond a reasonable doubt that Beaudet acted knowingly or negligently.*

¶4     *Issue Two: Whether the District Court erred by ordering the forfeited horses to be sold or adopted in the County's discretion.*

## PROCEDURAL AND FACTUAL BACKGROUND

¶5     On June 22, 2012, Beaudet arrived at the Missoula Livestock Exchange with three thoroughbred horses—two stallions and a mare—in a small stock trailer. She explained she had been kicked out of a place in Idaho, had no money, and was looking for shelter for her horses. The stockyard supervisor, Sue Flynn, told Beaudet the stockyard was not a boarding facility, but she would allow the horses to stay one night free of charge. The next day, Beaudet still had no money and no arrangements for the horses' care. Flynn suggested selling the horses, but Beaudet refused. She left the horses at the stockyard and "kind of just disappeared" until July 10, 2012.

¶6     Beaudet had brought the horses into Montana without a health certificate, and the horses had not been tested for equine infectious anemia as required by law. When Beaudet returned on July 10, Flynn asked Dr. Rollett Pruyn to test the horses and provide a health certificate so Beaudet could leave with the animals. Dr. Pruyn was not able to issue a health certificate because Beaudet could not tell him her final destination. Dr. Pruyn had difficulty explaining to Beaudet what she needed to do for the horses because "in her mind," she was

2

doing everything right. He did not believe Beaudet had "a good grasp of reality." Flynn encouraged Beaudet to offer the horses for adoption or seek assistance from an equine rescue organization. Beaudet ignored these recommendations. The horses remained at the Livestock Exchange until Beaudet picked them up on July 26, 2012.

¶7 On July 31, 2012, Missoula City-County Animal Control officers responded to a complaint that three horses were being confined in a trailer without adequate food or water. The officers called Dr. Pruyn to look at the animals. He recognized Beaudet's horses and observed they had lost weight since the last time he saw them. The area around the trailer did not show any sign that the horses had been let out. The trailer was designed for cattle, not horses, and was too short to allow the horses to stand up straight. Dr. Pruyn observed bite wounds and bruises on the horses, likely caused by the stallions fighting with each other and attempting to get to the mare. He recommended that the horses be seized. When Beaudet saw Dr. Pruyn, she got in her vehicle and drove away with the horses. After fleeing, Beaudet watered the horses, hosed out the trailer, and bought hay.

¶8 Beaudet and the horses were located again on August 2, 2012, in the parking lot of a Taco Bell. State livestock inspector Boone Jones observed that the horses "looked very gaunt." Jones had frequently seen the horses while they were at the stockyards, and he believed their condition had worsened. He observed that they had "several more bite marks . . . from being confined together and in a small space." Animal Control officer Mary Johnson observed that the horses were underweight, the mare's legs were swollen, and all three horses had "bite wounds that were actively bleeding." The horses were seized and transported to the stockyards.

3

¶9 Beaudet was charged with one misdemeanor and two felony counts of cruelty to animals. Trial was set for February 13, 2013. Beaudet appeared with her attorney in the District Court at a pretrial conference on February 12 and asked that trial be rescheduled for February 27. The request was granted, but Beaudet did not appear on February 27. The State amended the charges to three misdemeanor counts and the District Court proceeded with a bench trial in Beaudet's absence.

¶10 Beaudet was found guilty of three misdemeanor counts of cruelty to animals. The District Court proceeded immediately to sentencing. Beaudet was sentenced to a total of three years in the Missoula County Detention Facility with all but 30 days suspended. She was also ordered to pay $3,000 in restitution to Animal Control for the care of the horses. The horses were forfeited to the County to be sold or adopted in the County's discretion. If the horses were sold, the proceeds were to be applied toward Beaudet's restitution obligation.

## STANDARD OF REVIEW

¶11 When reviewing a criminal conviction for sufficiency of the evidence, we review the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Baker*, 2013 MT 113, ¶ 34, 370 Mont. 43, 300 P.3d 696. In the absence of a contemporaneous objection, we review the conditions of a criminal sentence for legality only. *State v. Ashby*, 2008 MT 83, ¶ 22, 342 Mont. 187, 179 P.3d 1164.

## DISCUSSION

¶12    *Issue One: Whether the State presented sufficient evidence to allow a rational trier of fact to find beyond a reasonable doubt that Beaudet acted knowingly or negligently.*

¶13    A person commits the offense of cruelty to animals if he or she knowingly or negligently subjects an animal to mistreatment or neglect by carrying or confining the animal in a cruel manner, failing to provide sufficient food and water, or failing to provide appropriate medical care. Section 45-8-211(1)(c), MCA. A person acts knowingly when the person is aware of his or her own conduct. Section 45-2-101(35), MCA. A person acts negligently when he or she either consciously disregards a risk, or disregards a risk of which he or she should be aware. Section 45-2-101(43), MCA. A finder of fact "'may infer the requisite mental state from what a defendant does and says and from all the facts and circumstances involved.'" *State v. Jackson*, 2009 MT 427, ¶ 28, 354 Mont. 63, 221 P.3d 1213 (quoting *State v. Sage*, 221 Mont. 192, 199, 717 P.2d 1096, 1100 (1986)).

¶14    Beaudet argues the State did not offer sufficient evidence to prove that she acted knowingly or negligently because Dr. Pruyn testified that "in her mind," she was caring for the horses appropriately. The State offered evidence that Beaudet arrived in Missoula seeking food, water, and shelter for the horses; she left them at the stockyards where they could receive such care; she told Flynn that she was unable to pay for proper care for the horses; and she cleaned the trailer, watered the horses, and bought hay the day after Animal Control attempted to seize the horses. Beaudet's actions demonstrated her awareness that conditions in the trailer were inadequate. Multiple witnesses testified that the horses were obviously malnourished, unable to stand up in the trailer, and visibly wounded and bleeding. Even if Beaudet was not consciously aware of the risk these conditions presented to her

horses, the evidence presented at trial showed that she should have been. The evidence was sufficient to allow a rational trier of fact to conclude beyond a reasonable doubt that Beaudet knew, consciously disregarded the risk, or should have known there was a risk that she was cruelly confining the animals and failing to provide them with adequate food, water, and medical care.

¶15 *Issue Two: Whether the District Court erred by ordering the forfeited horses to be either sold or adopted in the County's discretion.*

¶16 Beaudet argues the District Court exceeded its statutory authority when it allowed the County to decide whether the horses should be sold or adopted after forfeiture. She claims the County should be required to sell the horses and credit her with the proceeds, and that failing to do so constitutes a taking without just compensation. Beaudet, who was represented by an attorney at sentencing, did not object to the condition allowing sale or adoption of the horses. This Court generally will not review matters not objected to at the trial level, although we have recognized certain exceptions to this rule. *State v. Finley*, 276 Mont. 126, 137, 915 P.2d 208, 215 (1996), *overruled in part on other grounds, State v. Gallagher*, 2001 MT 39, ¶ 4, 304 Mont. 215, 19 P.3d 817; *State v. Lenihan*, 184 Mont. 338, 341-43, 602 P.2d 997, 999-1000 (1979).

¶17 We will review a criminal sentence, even if no objection was made, where it is alleged that the sentence is illegal or exceeds statutory authority. *Lenihan*, 184 Mont. at 343, 602 P.2d at 1000. This exception may also apply where it is alleged that the statute authorizing the sentence is itself unconstitutional. *State v. Whalen*, 2013 MT 26, ¶ 20, 368 Mont. 354, 295 P.3d 1055. Where a constitutional challenge is made to the application of the statute in a

particular case, however, the sentence is objectionable rather than illegal, and the *Lenihan* exception does not apply. *Whalen*, ¶ 21.

¶18 We may also review errors not objected to in the district court pursuant to our inherent power of plain error review. *Finley*, 276 Mont. at 137, 915 P.2d at 215. We exercise plain error review sparingly, on a case-by-case basis, and only "where failing to review the claimed error . . . may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial or proceedings, or may compromise the integrity of the judicial process." *Finley*, 276 Mont. at 137, 915 P.2d at 215. We will not invoke plain error review where a party has requested it for the first time in the reply brief. *State v. Raugust*, 2000 MT 146, ¶ 19, 300 Mont. 54, 3 P.3d 115.

¶19 To the extent Beaudet alleges the District Court exceeded its statutory authority, we may review the legality of the sentence under the exception stated in *Lenihan*. *Lenihan*, 184 Mont. at 343, 602 P.2d at 1000. Beaudet also alleges the application of the statute in this case—to allow adoption rather than sale of the forfeited horses—is an unconstitutional taking. Because her constitutional argument challenges the application of the statute, rather than the statute itself, it is not reviewable under *Lenihan*. *Whalen*, ¶ 21. In her reply brief, Beaudet asks the Court to consider this issue under the plain error doctrine. We will not exercise plain error review where a party has requested it for the first time in the reply brief. *Raugust*, ¶ 19. Beaudet has waived review of this issue. We will address only whether the District Court had statutory authority to allow the County to choose whether to offer the horses for sale or adoption.

7

¶20    When the owner of an animal is convicted of cruelty to animals, the owner may be required to forfeit the animal to the county in which he or she was convicted. Section 45-8-211(2)(b), MCA.  A person convicted of cruelty to animals must pay the reasonable costs of necessary veterinary care and may also be required to pay other reasonable costs incurred in caring for the animal.  Section 45-8-211(3), MCA.

¶21    Beaudet recognizes that this statute grants the District Court the authority to order forfeiture of the horses to the County.  She argues, however, that the District Court must order the County to sell the horses after forfeiture.  The statute contains no such limitation. Section 45-8-211(2)(b), MCA.  The statute gives the District Court no authority whatsoever to direct the County's disposition of forfeited animals.  Section 45-8-211(2)(b), MCA.  As Beaudet points out, when interpreting a statute, we may not insert what has been omitted or omit what has been inserted.  Section 1-2-101, MCA.  There is no authority in the statute for the District Court to specifically order the sale of forfeited animals rather than their adoption or, in the most unfortunate cases, humane destruction.  Indeed, the District Court may have exceeded its authority by ordering the County to apply the proceeds of any sale to Beaudet's restitution obligation, which is independent of the order of forfeiture.  Section 45-8-211(3), MCA.  If the District Court erred, it was in Beaudet's favor, and it is never wise to look a gift horse in the mouth.  The condition allowing the County to offer the horses for sale or adoption in its discretion was not illegal.

¶22    For the reasons stated above, the conviction and sentence are affirmed.

/S/ MIKE McGRATH

8

We Concur:

/S/ PATRICIA COTTER
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ MICHAEL E WHEAT