FILED

06/06/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0492

DA 22-0492

IN THE SUPREME COURT OF THE STATE OF MONTANA

2023 MT 108N

STATE OF MONTANA,

  Plaintiff and Appellee,

 v.

ROBERT EDWIN ERICKSON,

  Defendant and Appellant.

APPEAL FROM: District Court of the First Judicial District,
       In and For the County of Lewis and Clark, Cause No. CDC 2021-318
       Honorable Kathy Seeley, Presiding Judge

COUNSEL OF RECORD:

   For Appellant:

   Carl B. Jensen, Jr., Attorney at Law, Great Falls, Montana

   For Appellee:

   Austin Knudsen, Montana Attorney General, Tammy K Plubell,
   Assistant Attorney General, Helena, Montana

   Kevin Downs, Lewis and Clark County Attorney, Fallon Stanton,
   Deputy County Attorney, Helena, Montana

        Submitted on Briefs: April 12, 2023

           Decided: June 6, 2023

Filed:

       _____
           Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, we decide this case by memorandum opinion. It shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     Robert Erickson appeals his conviction for aggravated animal cruelty arising from his alleged neglect of about fifty horses in Lewis & Clark County. He challenges the District Court's decision to admit limited evidence of two previous Phillips County cases—Erickson's 1997 animal cruelty conviction and a 2009 deferred prosecution agreement with Erickson and his son Alan regarding animal cruelty charges. Erickson did not move in limine prior to trial to exclude evidence of other crimes and acts. During trial, the court rejected Erickson's argument that the evidence was unduly prejudicial. We affirm.

¶3     Following numerous welfare checks of the Ericksons' horses over the previous decade, the Lewis & Clark County Sheriff's Office executed a search warrant on June 1, 2021. Deputies seized 58 horses and transported them to the county fairgrounds. There a veterinarian identified various issues, including that eight horses were underweight, nineteen had overgrown hooves, numerous had lice, and at least five had abdominal hernias. The State charged Erickson with aggravated animal cruelty, a felony, in violation of § 45-8-217(2), MCA ("A person commits the offense of aggravated animal cruelty if the person purposely or knowingly . . . inflicts cruelty to animals on a collection, kennel, or herd of 10 or more animals."). The case went to trial on April 25, 2022.

2

¶4     In his opening statement to the jury, Erickson's counsel described Erickson's two sons as the horses' caretakers and Erickson as "essentially the money guy." During a recess, the State alerted the court that, given Erickson's plan to testify and the comments made in his counsel's opening statement, it believed that it likely would need to introduce evidence of Erickson's 1997 and 2009 cases. Erickson's counsel objected, stating that he had discussed Rule 404(b) with his client and counseled him to avoid testifying about topics that would open the door to such evidence. The State replied that it needed the evidence because it wanted to inquire whether Erickson, despite his claim to be just "the money guy," was aware that Alan—the person to whom he had entrusted the horses' care— had neglected horses before. The State also wanted the ability to contradict any attempts by Erickson to deny knowledge of maltreatment or to claim mistake, given that disposition of the previous cases specifically limited the number of horses he was permitted to care for (a maximum of 22 horses) and detailed the amount of feed they required. The court agreed that if Erickson claimed a lack of awareness, then evidence from the previous animal cruelty cases would be highly relevant. The court cautioned the State, however, to not go further than it needed to.

¶5     Erickson testified during cross-examination that he had never had a concern about the horses' condition and believed that they were in such good shape that they could be winning shows. He stated that he had no concern about his son Alan's ability to care for the horses. Erickson further testified that he had never had any involvement with his horses being neglected, abused, or mistreated and that there was no legal requirement for him to

count how many horses he owned. Erickson maintained that the horses had deteriorated after they were seized by the State.

¶6     At this point, the court recessed trial to address the evidentiary issue. Outside the presence of the jury, the court agreed that the State could introduce evidence of Erickson's previous cases, including Alan's charge and the requirement in the deferred prosecution agreement to adequately care for a limited number of horses, but without referencing "conviction" or "charges" when it came to Erickson himself. The court agreed with the State that the prior incidents addressed Erickson's knowledge and absence of mistake or accident, given Erickson's testimony. After the recess, the court gave a cautionary instruction to the jury and the State introduced the evidence in the limited manner it had proposed. At the end of the three-day trial, the jury found Erickson guilty.

¶7     We review a district court's evidentiary rulings for abuse of discretion, which occurs when a court acts arbitrarily without conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice. *State v. Madplume*, 2017 MT 40, ¶ 19, 386 Mont. 368, 390 P.3d 142. "To the extent an evidentiary ruling is based on a district court's interpretation of the Montana Rules of Evidence, our review is de novo." *Madplume*, ¶ 19.

¶8     All relevant evidence is admissible at trial unless limited by law. M. R. Evid. 402. Pertinent to this case, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." M. R. Evid. 403. Further, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible

4

for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." M. R. Evid. 404(b).

¶9    Erickson argues that the State admitted the evidence of the prior cases simply to prove that he was a bad actor, in violation of Rule 404(b). The State introduced the evidence, however, to respond to Erickson's several denials on the stand of his knowledge of the horses' neglect. Erickson's strategy appeared from the opening statement to be to distance himself from responsibility for the horses' care. Erickson's testimony further invited in the other-acts evidence. Under these circumstances, the State's limited cross-examination regarding the prior cases was directly relevant to Erickson's knowledge of the horses' conditions, their required care (including herd size and feed requirements), and the ability of his son Alan to care for them. The introduced evidence met the other-purposes exception to Rule 404(b). *See State v. McGhee*, 2021 MT 193, ¶ 26, 405 Mont. 121, 492 P.3d 518 (evidence of prior allegations was admissible as non-propensity impeachment evidence to contradict the defendant's good character testimony and his related assertions that he had no reason to believe his daughters did not want to be around him).

¶10    Erickson further asserts that the prejudicial effect of the other-acts evidence substantially outweighed any probative value and thus was inadmissible under Rule 403. The limited introduction of information from Erickson's previous cases was relevant to Erickson's claimed lack of knowledge regarding his horses, their caretaker, and the proper size of the herd. As the District Court stated during the recess in Erickson's testimony, "I am very concerned about witnesses getting on the stand and making untrue statements and

5

then just being allowed to walk away as though they did not. This is a search for the truth." The evidence's prejudicial effect was limited because the State introduced it without referring to any "charge" or "conviction" of Erickson. Moreover, the court provided a cautionary instruction that the evidence was to be used only for showing proof of Erickson's knowledge or absence of mistake, not to show he acted in conformity with the prior acts. Most evidence introduced against a defendant will be prejudicial; evidence rises to the level of being unfairly prejudicial only if "it arouses the jury's hostility or sympathy for one side without regard to its probative value, if it confuses or misleads the trier of fact, or if it unduly distracts from the main issues." *Madplume*, ¶ 33 (citation omitted). Erickson has demonstrated no such basis for the District Court to have concluded that the risk of unfair prejudice from introducing the prior-case evidence substantially outweighed its probative value.

¶11 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. Erickson's conviction is affirmed.

/S/ BETH BAKER

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE
/S/ INGRID GUSTAFSON
/S/ LAURIE McKINNON

6