FILED

05/07/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0510

DA 22-0510

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2024 MT 92N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

ALAN EDWIN ERICKSON,

      Defendant and Appellant.

APPEAL FROM:   District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. CDC 2021-316
Honorable Kathy Seeley, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Rufus I. Peace, Peace Law Group, LLC, Jacksonville, Florida

      For Appellee:

      Austin Knudsen, Montana Attorney General, Katie F. Schulz, Assistant
Attorney General, Helena, Montana

      Kevin Downs, Lewis and Clark County Attorney, Fallon Stanton, Deputy
County Attorney, Helena, Montana

Submitted on Briefs: February 28, 2024

Decided: May 7, 2024

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1　Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2　Defendant and Appellant Alan Edwin Erickson (Alan) appeals from the Judgment issued on July 7, 2022, by the First Judicial District Court, Lewis and Clark County. The court's Judgment followed Alan's guilty plea to felony Aggravated Animal Cruelty. We affirm in part, reverse in part, and remand for the District Court to strike the 10% administrative fee imposed in this case.

¶3　Alan and his father Robert Erickson (Robert) have a long history of both raising horses and being involved with law enforcement for criminally neglecting those horses. Robert was convicted of animal cruelty in Phillips County in 1997. Robert was again charged with animal cruelty in Phillips County in 2008, while Alan was charged with aggravated animal cruelty in Phillips County in 2009. Both Ericksons entered into deferred prosecution agreements for the charges which ultimately expired without the charges being reinstated. The Ericksons began keeping their horses in Lewis and Clark County sometime in 2010 or 2011. Since 2013, county officials have received a number of calls requesting welfare checks on the Ericksons' horses. In May 2018, a Lewis and Clark County animal control officer (ACO) responded to the Ericksons' property to investigate an injured horse.

2

Upon arrival, the ACO discovered a herd of approximately 40 horses split between two poorly maintained pastures and a corral located inside of a shop building. Inside the shop, the ACO discovered a stallion trapped on its side with its feet caught in a fencing panel who appeared to have been trapped for some time. A veterinarian was called to the scene, who determined the horses were receiving inadequate care and noted the shop corral was "grossly inadequate for basic health and well below the standard of care for equine facilities[.]" The ACO advised the Ericksons to obtain medical care for the horses and clean up their facilities. Over the next several months, the ACO continued to respond to the Erickson property to check on their progress in cleaning up the property and getting care for the horses. The ACO continually observed a growing herd which contained injured and underweight horses and lacked sufficient food. At some point, the Ericksons moved their herd to another location.

¶4      In May 2021, the ACO drove by the Ericksons' new pastures and saw a horse with fencing wire wrapped around its leg. While in the pasture freeing the horse, the ACO saw several injured and malnourished horses, several with overgrown hooves, among the herd of over 40 animals. Alan arrived and informed the ACO that he was responsible for the horses, the only person taking care of them at that point, and the horses were fine and not in need of care. A sheriff's deputy obtained a search warrant to check on the welfare of the horses with a veterinarian. The veterinarian assessed the horses and determined several were underweight and several needed care for severely overgrown hooves. On May 24, 2021, the ACO was dispatched for one of Alan's horses that had jumped the fence and

3

gotten loose. Once contained, the horse was discovered to be underweight, with ribs visible, and had extremely overgrown hooves. Upon arriving to pick up the horse, Alan was instructed to immediately get it in for hoof care. Further investigation revealed that Alan and his brother Clayton Erickson were purchasing hay to feed the horses, but not nearly enough to provide the minimum nutrition needed for the herd. On June 1, 2021, Sheriff's deputies executed a search warrant on the Ericksons' leased property and seized 58 horses, which were transported to the Lewis and Clark County fairgrounds for examination by a veterinarian. Several horses were determined to be underweight, 19 had overgrown hooves, a number of the horses had lice, and at least 5 had hernias which would likely require surgery.

¶5 Based upon the condition of the 58 horses in their herd, both Alan and Robert were each charged with felony Aggravated Animal Cruelty in violation of § 45-8-217(2), MCA. That statute provides that "[a] person commits the offense of aggravated animal cruelty if the person purposely or knowingly . . . inflicts cruelty to animals on a collection, kennel, or herd of 10 or more animals." Section 45-8-217(2), MCA. Before trial, Alan pled guilty to the charge. While attempting to provide the factual basis for his guilty plea during his change of plea hearing, Alan initially admitted he let the hooves of one horse get overgrown. Both the State and the District Court questioned the sufficiency of the factual basis in light of the statute's reference to "10 or more animals." After privately discussing the matter with his attorney, Ellie Boldman, Alan changed his allocution:

4

MS. BOLDMAN: Okay. So, Alan, on June 1st, 2021, in Lewis and Clark County, did you know that you neglected ten horses by letting their hooves get overgrown and it caused them pain and made it difficult for them to walk?

[ALAN]: Yes.

The District Court accepted Alan's guilty plea and set sentencing for June 22, 2022. This date was chosen so that, if Robert was convicted at his trial, there could be a joint sentencing hearing to address the Ericksons' future ownership of horses and potential amounts of restitution, which the State believed was "going to be a very complex issue[.]" Robert was convicted of aggravated animal cruelty at trial.[1]

¶6 The District Court held a sentencing hearing for both Alan and Robert on June 22, 2022. At that hearing, the court heard testimony from Dr. Jamie Clark, an equine veterinarian at Montana Equine Associates who had been involved in the care of the 58 horses seized from the Ericksons since the May 2021 incident, regarding the costs incurred caring for the horses since the seizure; Robert Erickson; Casey Filler, who recalled seeing the Ericksons' horses in their pasture when driving by the leased property and at the fairgrounds prior to being asked to leave by law enforcement; and Courtney Boyer, who saw the horses at the fairgrounds while volunteering after the horses were seized. Both Alan and Robert also made statements prior to the court imposing its sentence. The District Court sentenced Alan and Robert identically and orally imposed a six-year deferred sentence, forfeiture of the 58 seized horses, $343,292.36 for the cost of caring for the horses

---

[1] Robert appealed and this Court affirmed his conviction. *State v. Erickson*, No. DA 22-0492, 2023 MT 108N, 2023 Mont. LEXIS 583.

for which Alan and Robert were jointly and severally liable, as well as a 10% administrative fee on that amount.[2] The court's written Judgment followed on July 7, 2022. The written Judgment contained the same deferred sentence and forfeiture of horses terms, but the restitution amount for which Alan and Robert were jointly and severally liable was listed as $317,018.68, plus a 10% administrative fee for a total of $348,720.75.

¶7 Alan appeals. We consider the following restated issues on appeal: (1) whether Alan's claim relating to joint and several reimbursement with Robert for the county's costs related to caring for the 58 horses was waived by not objecting below, and (2) whether the District Court properly imposed a 10% administrative fee in this case.

¶8 Sentences not subject to sentence review are subject to review on direct appeal both for threshold legality and, to the extent discretionary, an abuse of discretion. *State v. Thibeault*, 2021 MT 162, ¶ 7, 404 Mont. 476, 490 P.3d 105.

¶9 On appeal, Alan asserts that, because he only acknowledged cruelty to 10 horses during his change of plea hearing, the imposition of joint and several liability with his father for the county's costs of caring for the herd of 58 horses was illegal and should be reviewed by this Court even though he did not object below. The State asserts Alan waived the issue by not objecting before the District Court. In response to the State's waiver

---

[2] It is noted that the county requested $323,292.36 in reimbursement costs. There was testimony from Dr. Clark at the sentencing hearing that the costs actually required to care for the horses "far exceeds" that amount and there was a "substantial amount of time and supplies and services that were not paid for or included" in the county's reimbursement request.

argument, Alan urges this Court to review his sentence, even though he did not object below, as he contends it is illegal.

¶10 Generally, issues not preserved by objecting below are waived and not subject to review on direct appeal. *Thibeault*, ¶ 9. As an exception to this general rule, we have long allowed for "appellate review of a criminal sentence that is alleged to be illegal or in excess of statutory mandates, even if the defendant raised no objection in the trial court." *State v. Kotwicki*, 2007 MT 17, ¶ 8, 335 Mont. 344, 151 P.3d 892 (citing *State v. Lenihan*, 184 Mont. 338, 343, 602 P.2d 997, 1000 (1979)). A sentence is not illegal if it falls within statutory parameters, however, and "a sentencing court's failure to abide by a statutory requirement rises to an objectionable sentence, not necessarily an illegal one that would invoke the *Lenihan* exception." *Kotwicki*, ¶ 13. Our ability to review Alan's claim relating to reimbursement for the county's costs expended in caring for the herd of 58 horses therefore depends on whether his sentence is "objectionable" or "illegal." *See State v. Tippets*, 2022 MT 81, ¶ 12, 408 Mont. 249, 509 P.3d 1.

¶11 Due to the nature of this case—animal cruelty—the relevant statute at issue for the reimbursement of costs incurred caring for the seized horses is § 45-8-211(3), MCA, not the general restitution statutes. "A person convicted of cruelty to animals must pay the reasonable costs of necessary veterinary care and may also be required to pay other reasonable costs incurred in caring for the animal." *State v. Beaudet*, 2014 MT 152, ¶ 20, 375 Mont. 295, 326 P.3d 1101 (citing § 45-8-211(3), MCA). When convicted of cruelty to animals, an offender "is liable for these statutorily-imposed costs, rather than restitution

imposed under the general sentencing provisions." *State v. Warren*, 2019 MT 49, ¶ 41, 395 Mont. 15, 439 P.3d 357.

¶12     When sentencing an offender convicted of animal cruelty, the district court:

> (a) shall require the defendant to pay all reasonable costs incurred in providing necessary veterinary attention and treatment for any animal affected, including reasonable costs of care incurred by a public or private animal control agency or humane animal treatment shelter;
>
> (b) may require the defendant to pay all reasonable costs of necessary care of the affected animal that are incurred by a public or private animal control agency or humane animal treatment shelter; and
>
> (c) shall prohibit or limit the defendant's ownership, possession, or custody of animals, as the court believes appropriate during the term of the sentence.

Section 45-8-211(3), MCA. This statute provides a court authority to require repayment of costs incurred caring for "any animal affected" by an offender's animal cruelty. Lewis and Clark County seized 58 horses from Alan and Robert after they had been receiving calls for welfare checks on the Ericksons' horses for nearly 10 years and had been actively intervening to protect their welfare for over three years. During that time, the Ericksons' herd continued to grow and the problems incurred by their inadequate care continued to mount. As a herd, the Ericksons' horses were underfed, underweight, injured, in need of hoof care, and had been kept in conditions which were "grossly inadequate for basic health and well below standard of care for equine facilities" and which contained "extensive hazards" before being moved to a new facility. The District Court's reimbursement order requiring repayment of costs for all 58 horses seized because they were "affected" by

8

animal cruelty is not an "illegal" sentence as it is within the authority provided by statute.[3]

Any alleged error stemming from Alan's claim regarding which specific horses among the herd he should be required to pay for due to the specific allocation he gave when pleading guilty would be an "objectionable" sentence which was not preserved as he did not object below.[4] "[U]nlike those that are facially illegal or imposed pursuant to a facially unconstitutional statute, *unpreserved* challenges to sentences or conditions on the basis of non-compliance with affirmative statutory prerequisites or mandates for that type of sentence or condition are *not reviewable* under the *Lenihan* exception." *Thibeault*, ¶ 10 n.4 (emphasis in original) (collecting cases). We will therefore not review Alan's allegation of error regarding the reimbursement amount under the *Lenihan* exception. *Tippets*, ¶ 14.

¶13 Whether the District Court had authority to impose the 10% administrative fee on Alan's reimbursement is a different matter than the underlying amount, however, and one we find is reviewable on appeal pursuant to the *Lenihan* exception.

---

[3] Regarding the discrepancy between the $323,292.36 amount requested by the State, the District Court's oral pronouncement of $343,292.36 in reimbursement costs, and the written judgment's $317,018.68 amount, it appears the court may have inadvertently mispronounced the cost of care amount. As we are remanding to strike the 10% administrative cost associated with restitution and not cost of care, we ask the District Court to review the cost of care amount pronounced and, if necessary, hold hearing to correct it on remand.

[4] Beyond not objecting, Alan's counsel informed the court that Alan was "willing to pay" the reimbursement costs in an amount the court determined was reasonable "and contribute with his father." Alan also repeatedly referred to himself as the caretaker of the herd in his dealings with the ACO who repeatedly responded to calls about the Ericksons' horses and on his PSI form, and requested "all the horses back" during sentencing.

¶14    We note that, in the proceedings below, both the District Court and the parties repeatedly used the term "restitution" to describe the county's costs incurred in caring for the 58 horses. On appeal, Alan contends the District Court did not actually impose restitution, because the government is not a "victim" as defined by § 46-18-243, MCA, and the costs imposed for the county's expenses were statutorily-allowed reimbursement costs under § 45-8-211, MCA. The State asserts it is a "victim" as defined by statute, and therefore the court had authority to impose restitution and the attendant 10% administrative fee.

¶15    "[A] sentencing court shall, as part of the sentence, require an offender to make full restitution to any victim who has sustained pecuniary loss, including a person suffering an economic loss." Section 46-18-241(1), MCA. When ordered to pay restitution as part of a sentence, the "offender shall pay the cost of supervising the payment of restitution, as provided in 46-18-245, by paying an amount equal to 10% of the amount of restitution ordered, but not less than $5." Section 46-18-241(2)(a), MCA.

¶16    As relevant here, "victim" is defined as "a governmental entity that . . . suffers loss of property as a result of the commission of an offense in this state[.]" Section 46-18-243(2)(a)(iii)(A), MCA. The State suffered no loss of property by Alan committing cruelty to his horses, but rather incurred expenses in caring for those horses after seizing them. Accordingly, the State is not a "victim" entitled to restitution. *State v. Jay*, 2013 MT 79, ¶ 48, 369 Mont. 332, 298 P.3d 396; *see also State v. Brothers*, 2013 MT 222, ¶¶ 12-13, 371 Mont. 254, 307 P.3d 306. The animal cruelty statutes, by requiring repayment for the costs

10

incurred caring for the affected animals, allow the State to recover its costs under § 45-8-211(3), MCA. But that recovery of costs is reimbursement and not restitution, and with no restitution ordered the District Court lacked statutory authority to impose the 10% administrative fee on the reimbursement amount. The court therefore issued an illegal sentence which is reviewable on direct appeal pursuant to the *Lenihan/Kotwicki* exception even though Alan did not object. Accordingly, we reverse the District Court's imposition of the administrative fee and remand with instructions to strike the 10% administrative fee. Further, given the discrepancy between the $323,292.36 the State sought, the $343,292.36 orally pronounced at sentencing, and the $317,018.68 ordered in the written judgment, we request the District Court to determine if it inadvertently mispronounced the cost of care amount and, if so, hold hearing to correct the error.

¶17 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶18 Affirmed in part, reversed in part, and remanded.

/S/ INGRID GUSTAFSON

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR
/S/ JIM RICE